FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

01 FEB -9 PM 2: 33

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| MARILYN HENRY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NUMBER: |
| ) | CV 00-B-1014-S |
| ) | |
| LINCOLN NATIONAL LIFE ) | |
| INSURANCE COMPANY, et al., ) | |
| ) | |
| Defendants. ) | |

ENTERED

FB - 2001

## MEMORANDUM OPINION

This matter is before the court on Plaintiff's Motion for Leave to Supplement Memorandum in Support of Remand, Plaintiff's Motion to Remand, and Plaintiff's Motion to Strike.¹ After careful consideration of the motions, briefs, arguments of counsel, and the relevant law, the court finds that federal subject matter jurisdiction exists and that the Booth Declaration meets the statutory requirements for unsworn statements established by 28 U.S.C. § 1746. Therefore, Plaintiff's Motion to Remand and Plaintiff's Motion to Strike are due to be denied. Plaintiff's Motion for Leave to Supplement Memorandum in Support of Remand is due to be granted.

---

¹The plaintiff moved the court to strike the Declaration of Michele M. Booth and attached exhibits (collectively the "Booth Declaration") submitted by the defendants in support of the removal.

1

I.     **Procedural Background**

Plaintiff Marilyn Henry ("plaintiff" or "Henry") filed this lawsuit on March 10, 2000, in the Circuit Court of Jefferson County, Alabama. Plaintiff brought claims on her own behalf and also on behalf of all persons throughout the United States who had purchased variable annuities from Lincoln within a tax deferred qualified retirement plan. (Compl. at ¶¶ 19-22.) Plaintiff asserted specific claims relating to her 1998 purchase of a variable annuity from Lincoln for inclusion within a Roth IRA. (Compl. at ¶¶ 6-9.) Defendants were served on April 5, 2000. (Notice of Removal at ¶ 3.)

On April 18, 2000, defendant removed the lawsuit from state to federal court alleging federal question subject matter jurisdiction based upon the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"). (Notice of Removal at ¶ 6.) On May 4, 2000, Lincoln amended and supplemented its grounds for removal, based upon the provisions of the Securities Litigation Uniform Standards Act, 15 U.S.C. § 77a *et seq.* ("SLUSA"), asserting that the lawsuit was a "covered class action" within the meaning of SLUSA and was therefore removable to federal court.[2] (Amendment to Notice of Removal at ¶ 5.)

Plaintiff's Motion to Remand seeks to have this lawsuit remanded to the Circuit Court of Jefferson County, Alabama. Plaintiff contends that:

> (1) Plaintiff's annuity was not purchased in a group benefits plan and is not subject to the Employee Retirement Income Security Act ("ERISA"); (2) the annuity contract is an insurance product regulated by the States; (3) the variable

---

[2]Because the SLUSA basis for removal was filed and asserted within thirty (30) days of service of process, it was timely. Plaintiff concedes that the amendment was timely.

2

annuity is not a "covered security"; (4) Congress did not intend for Securities Litigation Uniform Standards Act ("SLUSA") to preempt regulation of variable annuities; (5) the McCarran-Ferguson Act prevents application of SLUSA; and (6) the Defendant Lincoln Insurance is not a registered investment company under the Investment Company Act of 1940.

(Plaintiff's Mem. of Law in Support of Motion to Remand ("Pl.'s Brief") at 3.)

**II.     Motion to Strike**

Plaintiff argues that the "[d]eclaration of Michele M. Booth ("Booth") does not bear any affirmative attestation to the competency of the declarant." (Plaintiff's Motion to Strike at ¶ 2.) Additionally, plaintiff argues that the Booth Affidavit is due to be stricken from the record because "the declaration fails to properly identify Michele M. Booth as an 'affiant.'" (Plaintiff's Motion to Strike at ¶ 1.) Further, plaintiff argues that defendant's exhibits A1, A2, A3, and A4 attached to defendant's Notice of Removal are due to be stricken from the record because these exhibits are incorporated by Booth's declaration. (Plaintiff's Motion to Strike at ¶¶ 3 & 4.)

Booth's declaration identifies her as an assistant Vice President of Lincoln and shows that the declaration is based on personal knowledge. (Declaration of Michele M. Booth ("Booth Declaration") DX A at 1.) This is sufficient to identify the affiant and to establish Booth's competence. *See* FED. R. EVID. 602 (witness has personal knowledge); FED. R. EVID. 601 (competency); FED. R. CIV. P. 56(e) (form of affidavits). In her declaration Booth states "I affirm under the penalties of perjury that the foregoing statements are true," and signed and dated the declaration. (Booth Declaration DX at 2.) Therefore, the court finds that the Booth Declaration meets the statutory requirements for unsworn statements established by 28 U.S.C. § 1746. Thus, Plaintiff's Motion to Strike is due to be denied.

### III. Federal Question Jurisdiction Exists Pursuant to SLUSA

A defendant may remove to federal court "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the . . . laws of the United States . . . without regard to the citizenship or residency of the parties." 28 U.S.C. § 1441(b). Congress enacted SLUSA to preempt class actions based on state statutory or common law which involves a covered security. *See* 15 U.S.C. § 78bb(f)(1); H.R. Conf. Rep. No. 105-803 (1988). SLUSA establishes removal jurisdiction for "[a]ny covered class action brought in any State court involving a covered security . . . ." 15 U.S.C. § 78bb(f)(2). Defendant asserts that plaintiff's annuity was a "covered security;" that this lawsuit represents a "covered class action;" and, therefore, federal jurisdiction exists pursuant to SLUSA and the provisions of 28 U.S.C. § 1441(b).

The first step of the court's analysis is to determine whether this lawsuit is a "covered class action." Here, plaintiff seeks to represent a nationwide class that she estimates, exceeds 5,000 persons. (Compl. at ¶¶ 21-22.) SLUSA defines a "covered class action" as "any single lawsuit in which . . . one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members or the prospective class predominate over any questions affecting only individual persons or members . . . ." 15 U.S.C. § 78bb(f)(5)(B)(i)(II). Neither party disputes that the present action meets this definition of a covered class action. The only dispute, therefore, is whether the variable annuity in this case is a "covered security" as defined in SLUSA, or whether this lawsuit fits within the "savings" or "exclusionary" provisions of SLUSA, 15 U.S.C. § 78bb(f)(3)(A)(ii)(I).

Plaintiff asserts four reasons why her claim is not subject to the restrictions of SLUSA. First, plaintiff contends that "a review of the term 'covered securities' in SLUSA reveals that deferred annuities do not fit within the definition, nor are they the type of securities exempted from state regulation by the National Securities Markets Improvement Act of 1996 ("NSMIA") . . . ." (Pl.'s Brief at 2.) Second, plaintiff contends that "the McCarran-Ferguson Act, U.S.C. § 1011, *et seq.*, . . . mandates that federal laws (like NSMIA and SLUSA) shall not be 'construed to invalidate, impair, or supersede' state insurance law" claims involving the deferred annuities at issue here. (Pl.'s Brief at 2.) Third, plaintiff contends that she "has not raised any claims against any entity that is a registered investment company." (Pl.'s Brief at 2.) Fourth, plaintiff contends that SLUSA "is quite specific to fraud claims and does not extend to the plaintiff's claims arising under Unjust Enrichment, Money Had and Received, Conversion, Breach of Contract, Negligence, Negligent Training, Negligent Supervision, and Breach of Fiduciary Duty." (Plaintiff's Supplemental Mem. In Support of Remand ("Pl.'s Supp. Brief") at 2.)

SLUSA defines a "covered security" as any "security that satisfies the standards for a covered security specified in paragraph (1) or (2) of section 77r(b) of [Title 15], at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred . . . ." 15 U.S.C. § 78 bb(f)(5)(E). Section 77r(b) provides in relevant part that "[a] security is a covered security if such security is a security issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940." 15 U.S.C. § 77r(b)(2). In the present case, plaintiff purchased a variable annuity issued by Lincoln Life on August 11, 1998. (Annuity Contract PX A at 3.) Lincoln Life filed a

5

registration statement for these annuities under the Securities Act of 1933 and the Investment Company Act of 1940. (Registration Statement PX B.) Therefore, on its face the variable annuity at issue here meets the statutory definition of a "covered security" because it was a security issued by an investment company that is registered, or has filed a registration statement, under the Investment Company Act of 1940. *See Nations Bank v. Variable Annuity Life Ins. Co.,* 513 U.S. 251, 261 (1995) ("annuities are properly classified as investments, not 'insurance'").

Notwithstanding the fact that it is undisputed that plaintiff's variable annuity meets the SLUSA definition of a "covered security," plaintiff contends that SLUSA does not apply because variable annuities are insurance products, (Pl.'s Brief at 17-20), that are exempt from federal regulation as a result of the McCarran-Ferguson Act, 15 U.S.C. § 1011-1015, and its delegation to the states of the authority to regulate the business of insurance, (Pl.'s Brief at 20-25). The court disagrees.

The United States Supreme Court has articulated a three-part test for determining whether an activity constitutes part of the business of insurance: "'first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry.'" *Blackfeet Nat'l Bank v. Nelson,* 171 F.3d 1237, 1246 (11th Cir. 1999) (quoting *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129 (1982)). "Each of these criteria works in tandem with the others, and '[n]one of these criteria is necessarily determinative in itself.'" *Id.* at 1246-47. After examining the variable annuity Multi-Fund 4, purchased by plaintiff, the court is of the opinion that its sale is not part of the business of insurance.

First, it is clear that the variable annuity does not transfer plaintiff's risk to defendant. Plaintiff retains the risk of performance. Second, the sale of variable annuities is not an integral part of the relationship between an insurance company and an insured. Finally, the sale of variable annuities is not limited exclusively to entities within the insurance industry. Thus, using the three-part test set forth by the Supreme Court, the court concludes that defendant was not engaged in the business of insurance when it sold the variable annuity to plaintiff in this case.

Additionally, in *Securities Exchange Commission v. Variable Annuity Life Ins. Co. of America*, 359 U.S. 65, 71-73 (1959) ("*VALIC*"), the Supreme Court held that variable annuities such as those purchased by plaintiff are not purely "insurance" but also are regulated as "securities" subject to the Securities Act of 1933. The Supreme Court further held that Federal Securities Acts were not "reverse preempted" by the McCarran-Ferguson Act insofar as the securities aspects of variable annuities are concerned. *Id.* at 68 ("The question common to the exemption provisions of the . . . McCarran-Ferguson Act is whether [defendant is] issuing contracts of insurance."). The Court held that defendant was issuing securities and rejected defendant's argument that the Act applied. *See id.* at 71-73. In *VALIC*, the Securities and Exchange Commission ("SEC") sought to enjoin issuers of certain variable annuities from offering those products to the public unless the annuities were first registered as securities under the Securities Act of 1933 and complied with the Investment Company Act of 1940. *See id.* at 66. In response, the issuers argued that because they were insurance companies that were already regulated under the insurance laws of the District of Columbia, the McCarran-Ferguson Act prohibited application of the Federal Securities Acts and the Investment Company Act of 1940 to their annuity products, and that the variable annuities constituted purely "insurance" and were

not subject to regulation as "securities." *See id.* at 67-68. The Supreme Court rejected defendant's argument that variable annuities were governed by state insurance laws and, thus, not subject to regulation as securities under federal law. *See id.* at 71-73 ("For as we have said, the meaning of 'insurance' or 'annuity' under these Federal Acts is a federal question." *Id.* at 69.) Accordingly, the Supreme Court reversed the Court of Appeals' conclusion that variable annuities constituted purely "insurance" and were therefore exempt from the Federal Securities Act. *See id.* at 73.

*VALIC* also rejected the notion that the McCarran-Ferguson Act prohibited application of federal securities laws to variable annuity products, holding instead that variable annuities constituted "securities" subject to both the Federal Securities Act of 1933 and the Investment Company Act of 1940. *See id.* at 67, 73. The Supreme Court found that variable annuities were not exempt under the "the business of insurance" exception for purposes of exclusive state law regulation under the McCarran-Ferguson Act. *See id.* at 71-73; *see also, Nations Bank v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 261 (1995) ("annuities are properly classified as investments, not 'insurance'"); *John Hancock Mut. Life Ins. Co. v. Harris Trust and Savings Bank*, 510 U.S. 86, 101-102 (1993) (reaffirming *VALIC,* 359 U.S. 65 (1959), and stating that "[a] variable annuity . . . is not an 'insurance policy' within the meaning of the [McCarran-Ferguson Act]"); *Group Life and Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 210-11 (1979) ("It is important, therefore, to observe at the outset that the [McCarran-Ferguson Act] does not exempt the business of insurance companies from the scope of antitrust laws. The exemption is for the 'business of insurance,' not the 'business of insurers'. . . ."); *Securities and Exchange Commission v. National Securities, Inc.*, 393 U.S. 453, 459-60 (1969) ("The [McCarran-

Ferguson Act] did not purport to make the States supreme in regulating all the activities of insurance companies; its language refers not to the persons or companies who are subject to state regulation, but to laws 'regulating the business of insurance.' Insurance companies may do many things which are subject to paramount federal regulation; only when they are engaged in the 'business of insurance' does the statute apply."); *Securities and Exchange Commission v. United Benefit Life Ins. Co.*, 387 U.S. 202, 211-12 (1967) (stating that a "flexible fund" annuity was a "security" and was therefore subject to regulation under the Federal Securities Act); *Shaner v. Aetna Life Ins. & Annuity Co.*, No. CV-00-S-1110-NW, at 20 (N.D. Ala. Aug. 31, 2000) (holding that variable annuities meet the statutory definition of a covered security).

It is therefore well settled that variable annuities, such as the one purchased by plaintiff in 1998, are subject to the regulation of the federal securities laws. The court is not persuaded by plaintiff's arguments that variable annuities are not securities and that SLUSA is reverse preempted by the McCarran-Ferguson Act.

Plaintiff argues that even if variable annuities are deemed "covered securities" within the meaning of SLUSA, this case must be remanded because it falls within SLUSA's so-called "savings clause" found at 15 U.S.C. § 78bb(f)(3)(A)(ii)(I). That section of SLUSA preserves state court jurisdiction over certain class actions, but only those involving the "purchase or sale of securities by the issuer or an affiliate of an issuer exclusively from or to holders of equity securities of the issuer . . . ." 15 U.S.C. § 78bb(f)(3)(A)(ii)(I). By its terms, this "savings clause" applies only to transactions exclusively with existing shareholders of the issuer. *See Derdiger v. Tallman*, 75 F. Supp. 2d 322, 325 (D. Del. 1999) ("savings clause" applies to communications regarding the sale of corporate securities made by corporation's affiliate to corporation's

stockholders). Plaintiff argues that she and the class she seeks to represent, by purchasing Lincoln variable annuities, thereby became holders of equity securities of Lincoln and consequently fall within the "savings clause." Moreover, the court rejects this strained interpretation of the "savings clause" as contrary to the plain language of the statute. If plaintiff's argument were accepted, the exception would swallow the rule and erode or destroy Congress' intent in enacting SLUSA. Plaintiff did not purchase securities in Lincoln National Life Insurance Company when she purchased the variable annuity and thus, the SLUSA "savings clause" does not support Plaintiff's Motion for Remand.

Plaintiff also argues that the variable annuity that she purchased from defendant should not be deemed a security because it contains a fixed income investment option.[3] The court finds this argument to be without merit. A variable annuity is considered a security, as distinguished from a fixed annuity, which is considered an insurance product because the variable annuity places the risk of return on the annuitant. *S.E.C. v. VALIC,* 359 U.S. 65, 71 (1959); *see also Shaner,* No. CV-00-S-1110-NW, at 20 (N.D. Ala. Aug. 31, 2000). The fixed income option in this variable annuity is offered as an investment option. (Deferred Annuity Appl. PX A.) This fact does not transfer a sufficient amount of risk to the insurance company to transform the variable annuity into an insurance product. If the Multi-Fund 4 annuity is examined in its entirety it cannot fall within the insurance exception of the federal securities laws. Although the fixed investment option reduces the investment risk of the purchaser, there is a "difference

---

[3] In her 1998 Deferred Annuity Application plaintiff allocated money in the following manner: 5% to a fixed investment option, 10% Growth & Income, 15% Bond, 5% Managed, 10% Special Opportunities, 10% Social Awareness, 45% Aggressive Growth. (Deferred Annuity Application PX A.)

10

between a contract which to some degree is insured and a contract of insurance [that] must be recognized." *S.E.C. v. United Benefit Life Insur. Co.*, 387 U.S. 202, 211 (1967).

By choosing the fixed investment option plaintiff is guaranteed a return on five percent of her investment, but the percentage guaranteed in this case is so low that the risk assumed by the insurance company is insignificant. *See VALIC*, 359 U.S. at 69-70 (A variable annuity is not an insurance policy "because the contract's entire investment risk remains with the policyholder inasmuch as 'benefits vary with the success of the [insurer's] investment policy,' . . . and may be 'greater or less depending on the wisdom of [that] policy.'"). Even with the fixed investment option the risk is held substantially by the annuitant. Therefore, the court finds that a fixed income option does not remove a variable annuity from the category of a "covered security." Indeed, if the court adopted plaintiff's proposition, an issuer of variable annuity contracts could exempt itself from federal securities regulation simply by incorporating a fixed income investment option. Such a result would be at odds with the longstanding precedent and regulatory practice pursuant to which variable annuities are regulated by the securities laws.

Plaintiff has also erected a "strawman" argument. Plaintiff argues that because she has sued Lincoln Life as opposed to Lincoln National Variable Annuity Account C, the provisions of SLUSA do not apply. (Pl.'s Brief at 17-20.) This argument ignores the plain language of SLUSA. Under SLUSA, any covered class action in any state court is removable if it involves any covered security, regardless of the identity of the defendant. *See* 15 U.S.C. § 78bb(f)(1) (the statute identifies only private party plaintiffs, but does not distinguish between the identity of the defendant). SLUSA does not limit removal only to cases where the issuer or the registrant is a named defendant. *See* 15 U.S.C. § 78bb(f)(1) (identifying only the person who cannot maintain

11

the action). SLUSA applies regardless of whether plaintiff's claim is brought against Lincoln Life or Lincoln National Variable Account C because a suit naming either entity as a defendant must determine whether a "misrepresentation, omission, or manipulative or deceptive conduct occurred" when the annuity was sold. *See* 15 U.S.C. § 78bb(f)(1)(A)&(B).

Finally, the court rejects plaintiff's contention that SLUSA applies only to fraud claims and does not extend to plaintiff's claims for Unjust Enrichment, Money Had and Received, Conversion, Breach of Contract, Negligence, Negligent Training, Negligent Supervision, and Breach of Fiduciary Duty. (Pl.'s Supp. Brief at 2.) Plaintiff's contention that her "'non-fraud' causes of action do not require any element of 'statements or omissions of fact' or 'manipulative or deceptive device'" is contradicted by the language of plaintiff's own Complaint. (*See* Pl.'s Supp. Brief at 2.) Paragraphs seven, eight, and nine, which are incorporated by reference into each and every count of the Complaint, state as follows:

> 7.   Defendant Lincoln, through its agent and representative FFG, represented to Plaintiff that the Plaintiff could invest in mutual funds in her IRA account. The Defendants represented that the Plaintiff's IRA would be established as a "Roth" IRA under the provisions of the Taxpayer Relief Act of 1997. Defendants failed to establish and/or convert the Plaintiff's account as a Roth IRA.
> 8.   Furthermore, Defendants represented that the Plaintiff was required to purchase a variable annuity in order to invest her IRA money in mutual funds. Defendants Lincoln and FFG recommended the annuity as a tax deferral vehicle for the mutual funds.
> 9.   Based upon the representations and assurances of Defendants, Plaintiff purchased a variable annuity to fund her IRA.

(Compl. at ¶¶ 7-9.) These allegations are incorporated by reference into counts one, two, three, four, five, six, seven, and eight. (Compl. at ¶¶ 33, 37, 40, 43, 48, 58, 62, 67.) Counts nine and ten expressly allege "Deceit" and "Continuing Misrepresentations, Suppressions, etc." and also incorporate by reference the allegations set forth in paragraphs seven, eight, and nine. (Compl. at

¶¶ 75, 76, 85, 86.) Thus, an "untrue statement or omission of material fact" and/or "manipulative or deceptive device" permeate each cause of action. *See* 15 U.S.C. § 78bb(f)(1)(A)&(B). Plaintiff's own Complaint demonstrates that the fundamental allegation common to all counts of the complaint is the allegation that plaintiff was the victim of an untrue statement or omission of material fact.

SLUSA does not speak in terms of separate counts of the complaint. The statute states:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging (1) an untrue statement or omission of material fact in connection with the purchase or sale of a covered security; or (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p(b). Thus, rather than speaking in terms of separate counts of a complaint, SLUSA focuses upon the action as a whole.

Other courts have denied similar motions to remand despite the presence of "non-fraud" claims. *See Shaner v. Aetna Life Ins. & Annuity Co.,* Civil Action No. CV-00-S-1110-NW (N.D. Ala. Aug. 31, 2000) (Motion to remand denied in a case involving similar causes of action.); *see also In Re Lutheran Brotherhood Variable Ins. Prod. Co. Sales Practices Litigation,* 105 F. Supp. 2d 1037, 1041-42 (D. Minn. 2000) (complaint alleged claims for breach of contract, breach of fiduciary duty, and unjust enrichment as well as fraud claims); *Lasley v. New England Variable Life Ins. Co.,* No. C 99-0995 MMC, 1999 WL 33104899, at *1-3 (N.D. Ca. May 3, 1999) (state claims for breach of contract, negligence, and breach of covenant of good faith and fair dealing involve a covered security and are preempted by SLUSA). Therefore, plaintiff's argument that SLUSA applies only to fraud claims fails.

IV.     **Conclusion**

The court is of the opinion that this lawsuit is a "covered class action" involving a "covered security" within the meaning of SLUSA, and is not subject to the "savings clause" or any other exception to SLUSA. Therefore, defendants' removal of this action to this court was appropriate and Plaintiff's Motion to Remand is due to be denied. The court is also of the opinion that Plaintiff's Motion to Strike is also due to be denied. The court finds it unnecessary and therefore does not reach or decide whether Lincoln's alternative removal theory under ERISA was appropriate.

SLUSA provides, subject to narrow exceptions not here applicable, that "[n]o covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party. . . ." 15 U.S.C. § 78bb(f)(1)(A)-(B). Therefore, this action in its present form is due to be dismissed. Plaintiff is given fifteen (15) days from the date of this Order to file a motion for leave to amend to state a claim permitted by SLUSA. Any such motion to amend shall attach the proposed new complaint. If plaintiff fails to file such a motion within fifteen (15) days hereof, or if the motion is not allowed, the action will be dismissed without prejudice, costs taxed as paid. An Order in accordance with this memorandum opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** this 9th day of February, 2001

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
United States District Judge